**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KEVIN ALLURE,<br><br>Plaintiff,<br><br>v.<br><br>NURSE MARY REED, NURSE PRACTITIONER ROSE, and DR. MORPURI,<br><br>Defendants. | No.: 25-1240 (GC) (JTQ)<br><br>**OPINION** |

**CASTNER, District Judge.**

**THIS MATTER** comes before the Court on the filing of an amended complaint (Amended Complaint) (ECF No. 11) by *pro se* Plaintiff Kevin Allure. At the time Plaintiff submitted his Amended Complaint, Plaintiff was a pretrial detainee confined at Camden County Correctional Facility ("CCCF") in Camden, New Jersey. The Amended Complaint, filed pursuant to this Court's March 30, 2026 Opinion and Order (ECF Nos. 8, 9), substitutes Nurse Mary Reed, Nurse Practitioner Rose, and Dr. Morpuri for the previously named Nurse Jane Doe and Doctor John Doe Defendants and is now subject to screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a) and 42 U.S.C. § 1997e(c) to determine whether the Court should dismiss the pleading as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit.

The Court concludes that dismissal of this matter is not warranted at this early stage of the proceeding. The Amended Complaint shall proceed in its entirety against Defendants Nurse Mary Reed, Nurse Practitioner Rose, and Dr. Morpuri.

## I. BACKGROUND

In his original Complaint, Plaintiff named Nurse Jane Doe and Doctor John Doe as Defendants and alleged that they were deliberately indifferent to his serious medical needs by failing to treat his Suboxone withdrawal symptoms. (ECF No. 1.) On March 30, 2026, this Court screened the original Complaint and concluded that Plaintiff had adequately alleged both a serious medical need and deliberate indifference to that need, sufficient to proceed past screening. (ECF No. 8 at 5–7.) Because the summons and complaint could not be served on unidentified individuals, the Court directed Plaintiff to submit, within ninety days, an amended complaint identical to the original but naming the previously unidentified Defendants, or, alternatively, to request a subpoena under Federal Rule of Civil Procedure 45(c)(2) to assist in identifying them. (ECF No. 9.)

Plaintiff thereafter requested a subpoena, (ECF No. 10), which the Clerk's Office mailed to him. On May 4, 2026, Plaintiff submitted an Amended Complaint naming Nurse Mary Reed, Nurse Practitioner Rose, and Dr. Morpuri as Defendants in place of Nurse Jane Doe and Doctor John Doe. (ECF No. 11.) The factual allegations in the Amended Complaint mirror those in the original Complaint, with the addition of detail specific to each newly named Defendant.

According to Plaintiff, on September 21, 2024, he became very sick after the CCCF medical department discontinued his Suboxone prescription. (*Id.* at 7.) The medical department had previously placed Plaintiff on a thirty-day course of Suboxone at 4 mg and then "ended it abruptly," even though it was expected that Plaintiff would suffer withdrawal symptoms as a result.

(*Id.*) Plaintiff alleges he suffered "sickness of vomiting, sweating[,] and chills," as well as "spinning headaches," and that he was "close to death." (*Id.* at 7, 9.)

Plaintiff alleges that he repeatedly notified Defendant Nurse Mary Reed of his withdrawal symptoms through the facility's electronic kiosk system, including a September 22, 2024 message stating that he was "[h]aving sickness of vomiting, sweating and chills upon my suboxone expiring," and requesting to be seen by a doctor. (*Id.* at 7.) Nurse Reed responded only that Plaintiff "will be seen in provider sickcall." (*Id.*) Plaintiff alleges that he repeated this request, and received the same response, on multiple subsequent occasions, including in a September 28, 2024 grievance in which he stated that he had been suffering withdrawal symptoms "since last Friday," had written every day, and had never been treated. (*Id.* at 7, 9.) Plaintiff alleges that Nurse Reed did not prescribe him any medication for his withdrawal symptoms and did not otherwise treat him, despite her repeated assurances that he would be seen. (*Id.*)

Plaintiff was not seen for a provider sick call until October 7, 2024, more than two weeks after his initial complaints. (*Id.* at 9.) On that date, Defendant Nurse Practitioner Rose met with Plaintiff. (*Id.*) Plaintiff alleges that he told Nurse Practitioner Rose about his withdrawal symptoms and that she responded that she would inform the doctor, but that she "did not treat him" for his withdrawal symptoms. (*Id.*) Plaintiff alleges that he was not seen by a doctor until several weeks later, after his withdrawal condition had already "ran its course." (*Id.*)

Plaintiff alleges that Defendant Dr. Morpuri was the head doctor responsible for the medical department during the relevant period and, along with Nurse Practitioner Rose, was a medication provider with the ability to treat Plaintiff's withdrawal condition. (*Id.*) Plaintiff alleges that Dr. Morpuri did not treat him for his withdrawal symptoms. (*Id.* at 5, 9.) Plaintiff alleges that all three Defendants are sued in their individual capacities. (*Id.* at 9.)

Plaintiff alleges that he exhausted his administrative remedies through Grievance No. 11-202432278, in addition to numerous sick call requests submitted in September and October 2024. (*Id.* at 4.) Plaintiff seeks $300,000.00 in compensatory damages for pain, suffering, and emotional distress, as well as punitive damages, and has demanded a jury trial. (*Id.* at 11–12.)

## II. LEGAL STANDARD

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review prisoner complaints when the prisoner is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). Courts must also review prisoner complaints seeking redress against a governmental employee or entity, *see id*. § 1915A(a), or bringing an action with respect to prison conditions, *see* 42 U.S.C. § 1997e(c). District courts may *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which the court may grant relief, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1). This screening obligation applies equally to an amended complaint substituting named defendants for previously unidentified Doe defendants.

The legal standard for dismissing a complaint for failure to state a claim pursuant to §§ 1915(e)(2)(B), 1915A(a), or 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). A court properly grants a motion to dismiss under Rule 12(b)(6) "if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (citing *Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3d Cir. 1986)).

At this early stage of the litigation, the Court accepts the facts alleged in the *pro se* Amended Complaint as true, draws all reasonable inferences in Plaintiff's favor, and asks only whether the pleading, liberally construed, contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), abrogation on other grounds recognized by *Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). The complaint must allege "'sufficient factual matter' to show that the claim is facially plausible." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Conclusory allegations do not suffice. *See id.*; *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (stating that courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements" (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021))).

While courts liberally construe *pro se* pleadings, pro se litigants still are required to allege sufficient facts to support a claim. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013); Thakar v. Tan, 372 F. App'x 325, 328 (3d Cir. 2010). "[The Court's] preliminary review under 28 U.S.C. § 1915 does not determine whether the allegations in the [c]omplaint would survive a properly supported motion to dismiss filed by a defendant after service." *Stahler v. Kelly*, No. 25-15183, 2026 WL 475379, at *2 n.1 (D.N.J. Feb. 19, 2026) (citing *Richardson v. Cascade Skating Rink*, No. 19-8935, 2020 WL 7383188, at *2 (D.N.J. Dec. 16, 2020)).

## III. DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. (*See* ECF No. 11 at 2.) To state a claim for relief under § 1983, a plaintiff must allege: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federally secured right. *See Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

The Court construes the *pro se* Amended Complaint as alleging an individual-capacity damages claim under § 1983 against Nurse Mary Reed, Nurse Practitioner Rose, and Dr. Morpuri for denial of medical treatment. The Eighth Amendment's prohibition on cruel and unusual punishment requires prison officials to provide basic medical treatment to inmates.[1] *See Perotti v. United States*, 664 F. App'x 141, 144 (3d Cir. 2016) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)); *see also Duran v. Merline*, 923 F. Supp. 2d 702, 719 (D.N.J. 2013) (explaining that the Constitution mandates that prison officials satisfy inmates' "basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety" (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993))).

To plead deliberate indifference to serious medical needs, an inmate must allege that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff." *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (citing *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003)). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Mitchell v. Beard*, 492

---

[1] As a pretrial detainee, Plaintiff's right to adequate medical care arose under the Due Process Clause of the Fourteenth Amendment. *See* Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003). But courts analyze such claims using the same deliberate indifference standard that applies under the Eighth Amendment. *See* id. at 581–82.

F. App'x 230, 236 (3d Cir. 2012) (*per curiam*) (quoting *Atkinson*, 316 F.3d at 272–73). The Third Circuit has found "'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

Liberally construing the *pro se* Amended Complaint in Plaintiff's favor, accepting the factual allegations as true, and viewing the allegations in the light most favorable to Plaintiff, the Court concludes that, for screening purposes, Plaintiff adequately alleges a serious medical need common to his claims against all three Defendants. As to the "serious medical condition" prong, Plaintiff alleges that he was prescribed Suboxone for thirty days, that upon the abrupt discontinuation of Suboxone he suffered multiple withdrawal symptoms over a period of weeks, including vomiting, sweating, chills, and severe headaches, and that he repeatedly notified medical staff of his condition. (ECF No. 11 at 7, 9.) A reasonable inference may be drawn from these allegations that the need to treat Plaintiff's withdrawal symptoms was so obvious that a lay person would easily recognize the necessity for a doctor's attention. *See Iqbal*, 556 U.S. at 678; *Mitchell*, 492 F. App'x at 236. The sufficiency of the deliberate indifference prong, however, is not uniform across Defendants and is addressed as to each in turn below.

As to Nurse Reed, Plaintiff plausibly alleges, for screening purposes, that she knew of his need for medical treatment but, despite repeatedly assuring him that he would be seen in provider sick call, did not prescribe medication or otherwise treat his withdrawal symptoms, resulting in a delay of more than two weeks before he was seen by any provider. *See Parkell*, 833 F.3d at 337.

As to Nurse Practitioner Rose, the allegations present a closer question, though they are similar in kind to those the Court previously found sufficient as to the originally named Nurse Jane

Doe. Plaintiff alleges that Nurse Practitioner Rose examined him on October 7, 2024, that he told her his withdrawal symptoms, and that she responded she would inform the doctor; Plaintiff further alleges that she did not treat him at that visit, and that he was not seen by a doctor until several weeks later, after his withdrawal condition had run its course. (ECF No. 11 at 9.) This account closely resembles what Plaintiff previously alleged against Nurse Jane Doe—a single sick-call encounter at which the nurse did not prescribe treatment and stated only that she would inform the doctor—allegations the Court found sufficient to proceed past screening. (*See* ECF No. 8 at 6–7.) Unlike the allegations against Nurse Reed, however, the Amended Complaint does not allege that Nurse Practitioner Rose had any further contact with Plaintiff after October 7, 2024, or that she, rather than the scheduling of a doctor's appointment, was responsible for the ensuing delay; Plaintiff's remaining allegation, that she was a medication "provider" with "the ability to treat" his condition, is stated only in general terms. (*Id.*) Mindful that the Amended Complaint must be liberally construed in Plaintiff's favor at this early stage, and given the similarity of these allegations to those already found sufficient in this case, the Court will permit the claim against Nurse Practitioner Rose to proceed past screening, without prejudice to her ability to challenge the sufficiency of these allegations on a properly supported motion following service. *See Stahler*, 2026 WL 475379, at *2 n.1.

As to Dr. Morpuri, the allegations present a similarly close question. Plaintiff alleges that Dr. Morpuri was the head doctor responsible for the medical department during the relevant period and, along with Nurse Practitioner Rose, was a medication provider with the ability to treat Plaintiff's withdrawal condition but did not do so. (ECF No. 11 at 9.) This allegation is broadly consistent with what Plaintiff alleged against the previously named Doctor John Doe—that the doctor in charge of the medical department did not give him medication for his withdrawal symptoms—which the Court found sufficient to proceed past screening. (*See* ECF No. 8 at 2, 6–

7.) Unlike the allegations against Nurse Reed, however, the Amended Complaint does not allege that Dr. Morpuri personally responded to any of Plaintiff's kiosk messages or grievances—that conduct is now attributed to Nurse Reed—or otherwise identify any specific encounter or communication through which Dr. Morpuri was made personally aware of Plaintiff's condition; the allegation instead rests on Dr. Morpuri's position of authority over the medical department and his generalized "ability to treat." A defendant's personal involvement in the alleged wrongdoing, rather than his supervisory position alone, is ordinarily required to sustain an individual-capacity claim under § 1983. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."). Mindful, however, of the obligation to construe *pro se* pleadings liberally at this early stage, and drawing the reasonable inference that a physician described as a treating "provider" during the relevant period would have had some awareness of a detainee's documented, escalating complaints, the Court will permit the claim against Dr. Morpuri to proceed past screening as well, without prejudice to his ability to raise the sufficiency of these allegations—including any personal-involvement deficiency—on a properly supported motion following service.

Accordingly, the Amended Complaint shall proceed against Nurse Mary Reed, Nurse Practitioner Rose, and Dr. Morpuri in their individual capacities.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint shall PROCEED against Defendants Nurse Mary Reed, Nurse Practitioner Rose, and Dr. Morpuri in their individual capacities. An appropriate Order follows.

Dated: October 26, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE